ELMORE, Judge.
 

 *511
 
 The interlocutory appeals and cross-appeals in this complex insurance case arise from an action brought by a diversified products manufacturer and seller that, since 1971, secured from about two dozen insurers a sophisticated multi-policy commercial liability insurance package; for a few undisclosed years manufactured products containing benzene and asbestos and, consequently, has paid or incurred substantial litigation defense costs and liabilities to resolve hundreds of related products-liability claims; and then, years later, after settling coverage disputes with several of its insurers, brought the instant action against its remaining solvent insurers, seeking a judgment declaring the extent to which those insurers owe it a duty to pay its defense and indemnity costs under their respective policies for past and future benzene and asbestos claims brought against it.
 

 Over the course of litigation, the parties moved and cross-moved for partial summary judgment on various coverage issues. After multiple hearings, the trial court entered fifteen orders resolving most disputes in the context of these progressive disease claims, including the proper theory to determine whether coverage has been triggered under a policy, method to allocate defense and indemnity costs for claims spanning multiple policy periods, and method to determine when underlying coverage exhausts and excess or umbrella coverage attaches. But before the court entered any final judgments in the action, the parties appealed or cross-appealed six of those orders.
 

 This case presents various insurance liability coverage issues, including which trigger, allocation, and exhaustion theories or methods should apply to progressive disease claims spanning multiple policy periods of a decades-long, multi-carrier, multi-policy, multi-layered liability insurance coverage block. The dispositive issue, however, is
 
 *512
 
 whether this case should dismissed at this stage in litigation. Several insurers request that we dismiss these appeals and cross-appeals so the trial court can enter a final judgment fully and finally resolving all claims. These insurers argue that the interlocutory orders on appeal would not irreparably affect substantial rights justifying immediate review. The insured and one insurer claim entitlement to immediate review on the basis that the orders affect their substantial rights.
 

 Because these six interlocutory orders were not Rule-54(b)-certified by the trial court as appropriate for immediate appeal, nor has any party demonstrated sufficiently how any order affects its substantial rights and would work injury if not immediately reviewed, we dismiss these appeals and cross-appeals to allow the trial court to fully and finally resolve all matters before entertaining appellate review.
 

 I. Background
 

 Because thousands of documents in the appellate record and the parties' fifteen briefs were filed under seal, our discussion and analysis is limited.
 

 Plaintiff Radiator Specialty Company (RSC) is an automotive, hardware, and plumbing products manufacturer and seller. Since 1971, RSC has insured itself against various risks from operating its business, securing from twenty-five insurers over one-hundred primary, excess, or umbrella commercial general and/or products liability insurance policies providing coverage for nearly annual periods in differing amounts, policies subject to differing limits, retentions, and deductibles. Five of those insurers, Fireman's Fund, Landmark, National Union, United National, and Zurich (defendants) issued RSC twenty-five primary, excess, or umbrella policies for nearly annual periods within a 1976-2014 coverage block.
 

 For a few years within that coverage block, RSC manufactured products containing benzene and asbestos. As a result, RSC has been named as a defendant or co-defendant in hundreds of benzene- and asbestos-related products liability claims filed across the United States. Over several years, RSC has paid or incurred substantial litigation
 
 *456
 
 defense and liability costs to resolve hundreds of those claims and has entered into coverage settlements with many of its insurers.
 

 In February 2013, RSC brought the instant action against its remaining fifteen solvent insurers, alleging they owed it a duty to indemnify RSC for its defense and liability costs and to reimburse RSC for its payment of those costs, and seeking a declaration of the rights, status, duties,
 
 *513
 
 and obligations of those insurers under their respective policies to pay RSC's defense and indemnity costs for the benzene and asbestos claims. In July 2015, RSC amended its complaint and named nine insurers, including defendants, seeking declarations of those insurers' defense and indemnity duties for the benzene claims and declarations of six insurers' duties for the asbestos claims. RSC's amended complaint also added two claims against National Union for its alleged bad faith refusal to pay defense costs or settle claims, seeking punitive damages, and its alleged unfair and deceptive trade practices, seeking treble damages. RSC demanded a jury trial on all six of its claims for relief.
 

 Throughout the litigation, the parties advanced several theories of insurance coverage and moved and cross-moved for partial summary judgment on several issues. First, the parties disputed the proper theory of triggering coverage under a policy with respect to these progressive disease claims. RSC and one insurer moved for application of an "injury-in-fact" trigger, a theory in which coverage for "bodily injury occurs when there is medical evidence establishing when the injury occurred, regardless of when it becomes diagnosable."
 
 Imperial Cas. & Indem. Co. v. Radiator Specialty Co.
 
 ,
 
 862 F.Supp. 1437
 
 , 1441 (E.D.N.C. 1994) (citations omitted),
 
 aff'd
 
 ,
 
 67 F.3d 534
 
 (4th Cir. 1995). Other insurers moved for application of an "exposure" trigger, meaning coverage would only be triggered during periods in which claimants were actually exposed to benzene or asbestos.
 

 Second, the parties disputed the proper method for allocating defense and indemnity costs when a covered claim spans multiple policy periods. RSC moved for application of an "all-sums" allocation, a method by which "a triggered insurer is liable for all costs associated with a claim, subject to a right of contribution among any other triggered insurers." The insurers moved for application of a "pro-rata" allocation, in which "costs are spread among the triggered insurers, and to the insured for uninsured periods, in a time-on-the-risk manner."
 

 Third, the parties disputed the proper underlying-policy exhaustion method to trigger excess or umbrella coverage. Two umbrella insurers moved for application of "horizontal" exhaustion, meaning that the insured must exhaust all available underlying coverage before turning to excess or umbrella coverage. The competing position was "vertical" exhaustion, meaning that once an underlying policy exhausts, the coverage obligation shifts upward to the excess or umbrella policy covering the same policy period.
 

 After five days of motions hearings on these and other coverage disputes, the trial court allegedly entered fifteen orders on 28 or
 
 *514
 
 29 January 2016, although only eight are included in the appellate record. Relevant for this discussion are the six orders on appeal and their challenged rulings.
 

 First, the court ruled that exposure trigger theory was the appropriate theory to determine when coverage under a policy was triggered ("Trigger Order"). Second, the court ruled that pro-rata allocation, based on a time-on-the-risk manner, was the proper method to allocate defense and indemnity costs for claims spanning multiple policy periods ("Allocation Order"). Third, the court ruled that horizontal exhaustion was the proper method to trigger excess or umbrella coverage, entering one order applicable to Zurich's umbrella policy ("Zurich Horizontal Exhaustion Order") and another applicable to Landmark's umbrella policies ("Landmark Partial Summary Judgment Order"). Next, the court ruled that RSC may not apply settlement payments and indemnity incurred without Zurich's consent to deduce the liability-retained limit of Zurich's umbrella policy, as required to trigger its indemnification obligations ("Zurich Indemnity Obligations Order"). Finally, the court ruled that RSC's coverage settlement with a primary insurer
 
 *457
 
 does not cease United National's coverage obligations under its excess policy ("United National Coverage Cessation Order").
 

 On 26 February 2016, RSC appealed the Allocation Order, Trigger Order, Zurich Indemnity Obligations Order, Zurich Horizontal Exhaustion Order, and Landmark Partial Summary Judgment Order. That same day, Fireman's Fund appealed the Trigger Order, Landmark Partial Summary Judgment Order, and Zurich Horizontal Exhaustion Order. On 29 February 2016, United National appealed the Allocation Order and United National Coverage Cessation Order. That same day, Zurich cross-appealed the Zurich Horizontal Exhaustion Order.
 

 II. Analysis
 

 On appeal or cross-appeal, the parties challenge several of the trial court's rulings. In RSC's appeals, it contends the court erred in applying an exposure trigger, rather than an injury-in-fact trigger; a pro-rata allocation, rather than an all-sums allocation; and a horizontal exhaustion method, rather than a vertical exhaustion method, with respect to Landmark's umbrella coverage obligations. RCS also asserts the court erred by ruling it cannot apply settlement payments and indemnity incurred without Zurich's consent to erode the retained-liability limit of Zurich's umbrella policy. In Fireman's Fund's cross-appeal, it also challenges the trial court's application of an exposure trigger, rather than an injury-in-fact trigger. In United National's cross-appeal, it contends the
 
 *515
 
 court erred by ruling that RSC's settlement with an underlying insurer does not terminate its coverage obligation for that policy period. In Zurich's cross-appeal, it contends the court erred by including a footnote to its Zurich Horizontal Exhaustion Order that, Zurich alleges, implies that its umbrella coverage obligations may attach in a situation other than complete horizontal exhaustion.
 

 However, we must first consider the appealability of these interlocutory orders. Landmark, National Union, United National, and Zurich contend these interlocutory appeals and cross-appeals are premature and should be dismissed so the trial court can fully and finally resolve all matters before appellate review. These insurers argue the orders are interlocutory, do not affect substantial rights, and would not work injury if not reviewed before final judgment.
 

 RSC and Fireman's Fund disagree. These parties argue we should immediately review their appeals. Fireman's Fund asserts that the orders constitute a final judgment for appeal purposes and, alternatively, that the Trigger Order affects substantial rights because it dictates which insurers owe RSC defense in pending claims. RSC asserts the Trigger Order, Allocation Order, Zurich Horizontal Exhaustion Order, and Landmark Partial Summary Judgment Order would irreparably affect its substantial rights absent immediate review because the orders eliminate or severely restrict its ability to obtain insurance defense in pending claims.
 

 A. Orders are Interlocutory
 

 As an initial matter, we reject Fireman's Fund's argument that these series of partial summary judgment orders constitute a final judgment under N.C. Gen. Stat. § 7A-27(b)(1) (2015) (providing statutory right to appeal from final judgments of the superior court).
 

 A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court. An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.
 

 Veazey v. City of Durham,
 

 231 N.C. 357
 
 , 361-62,
 
 57 S.E.2d 377
 
 , 381 (1950) (citations omitted).
 

 Although RSC and its other insurers concede the orders are interlocutory, Fireman's Fund argues that, because the trial court "virtually
 
 *516
 
 decided all the issues of law in dispute" and "left only collateral issues for determination," the orders, properly interpreted, constitute a final judgment for appeal purposes. Fireman's Fund cites to
 
 Duncan v. Duncan
 
 ,
 
 366 N.C. 544
 
 ,
 
 742 S.E.2d 799
 
 (2013), in which our Supreme Court held that "[a]n order that completely decides the merits of an action ... constitutes a final judgment for
 
 *458
 
 purposes of appeal even when the trial court reserves for later determination collateral issues
 
 such as attorney's fees and costs
 
 ."
 
 Id.
 
 at 546,
 
 742 S.E.2d at 801
 
 (emphasis added) (citation omitted).
 

 Here, conversely, notwithstanding RSC's pending attorney's fees request, other non-collateral issues remain unresolved. Significantly, although the orders resolve certain coverage disputes, the issue of damages remains pending.
 
 See
 

 Tridyn Indus., Inc. v. Am. Mut. Ins. Co.
 
 ,
 
 296 N.C. 486
 
 , 492,
 
 251 S.E.2d 443
 
 , 448 (1979) (dismissing as interlocutory "an order of partial summary judgment on the issue of liability, reserving for trial the issue of damages");
 
 see also
 

 Land v. Land
 
 ,
 
 201 N.C.App. 672
 
 , 673,
 
 687 S.E.2d 511
 
 , 513-14 (2010) ("Where defendants' liability for ... damages has been established by jury verdicts, and the only unresolved issue before the trial court is the amount of damages to be awarded, [the] appeal is interlocutory, does not affect a substantial right, and must be dismissed."). Further, the record indicates RSC's two individual claims against National Union remain pending. Accordingly, because claims remain unresolved and matters still need to be judicially determined in the trial court, these orders are interlocutory.
 

 B. Appellate Jurisdiction
 

 Landmark, National Union, United National, and Zurich contend we lack jurisdiction over these appeals and cross-appeals because no order would irreparably affect substantial rights absent immediate appellate review. RSC and Fireman's Fund disagree and claim a right to immediate appeal on the basis that the orders affect substantial rights.
 

 "[I]t is the duty of an appellate court to dismiss an appeal if there is no right to appeal."
 
 Pasour v. Pierce
 
 ,
 
 46 N.C.App. 636
 
 , 639,
 
 265 S.E.2d 652
 
 , 653 (1980) (citing
 
 Waters v. Qualified Pers., Inc.
 
 ,
 
 294 N.C. 200
 
 , 201-02,
 
 240 S.E.2d 338
 
 , 340 (1978) ). "Generally, there is no right of immediate appeal from interlocutory orders."
 
 Goldston v. Am. Motors Corp.
 
 ,
 
 326 N.C. 723
 
 , 725,
 
 392 S.E.2d 735
 
 , 736 (1990). The purpose for this rule "is to prevent fragmentary, premature and unnecessary appeals by permitting the trial divisions to have done with a case fully and finally before it is presented to the appellate division."
 
 Waters
 
 ,
 
 294 N.C. at 207
 
 ,
 
 240 S.E.2d at 343
 
 .
 

 *517
 
 Yet immediate appeal from an interlocutory order may be allowed in two situations. First, an appeal may lie in multi-claim or multi-party litigation, if the trial court certifies under Rule 54(b) of the North Carolina Rules of Civil Procure that its order represents a final judgment as to some claims or parties and that there is no just reason to delay the appeal. N.C. Gen. Stat. § 1A-1, Rule 54(b) (2015). Second, an appeal may lie if the order qualifies under
 
 N.C. Gen. Stat. §§ 1-277
 
 and 7A-27(d)(1) (2015), typically because it affects a " 'substantial right which [the appellant] might lose if the order is not reviewed before final judgment.' "
 
 Hanesbrands Inc. v. Fowler
 
 ,
 
 369 N.C. 216
 
 , ----,
 
 794 S.E.2d 497
 
 , 499 (2016) (quoting
 
 City of Raleigh v. Edwards
 
 ,
 
 234 N.C. 528
 
 , 530,
 
 67 S.E.2d 669
 
 , 671 (1951) ).
 

 Here, because no order is Rule 54(b) -certified as appropriate for immediate appeal, to establish appellate jurisdiction RSC and Fireman's Fund bear the burden of demonstrating how each order it appeals " '(1) affect[s] a substantial right and (2) [will] work injury if not corrected before final judgment.' "
 
 Harris v. Matthews
 
 ,
 
 361 N.C. 265
 
 , 269,
 
 643 S.E.2d 566
 
 , 569 (2007) (quoting
 
 Goldston,
 

 326 N.C. at 728
 
 ,
 
 392 S.E.2d at
 
 737 );
 
 see also
 

 Goldston
 
 ,
 
 326 N.C. at 726
 
 ,
 
 392 S.E.2d at 736
 
 ("[A]n appeal from an interlocutory order will be dismissed as fragmentary and premature unless the order affects some substantial right and will work injury to appellant if not corrected before appeal from final judgment."). "It is the appellant's burden to present appropriate grounds for ... acceptance of an interlocutory appeal, ... and not the duty of this Court to construct arguments for or find support for appellant's right to appeal[.]"
 
 Hanesbrands
 
 , 369 N.C. at ----,
 
 794 S.E.2d at 499
 
 (quoting
 
 Johnson v. Lucas
 
 ,
 
 168 N.C.App. 515
 
 , 518,
 
 608 S.E.2d 336
 
 , 338,
 
 aff'd per curiam
 
 ,
 
 360 N.C. 53
 
 ,
 
 619 S.E.2d 502
 
 (2005) ).
 

 To satisfy this burden, RSC and Fireman's Fund must allege in the "statement
 
 *459
 
 of the grounds for appellate review" section of their briefs "sufficient facts and argument [establishing] that [a] challenged order affects a substantial right," N.C. R. App. P. 28(b)(4), and "must present more than a bare assertion that [an] order affects a substantial right; they must
 
 demonstrate why
 
 [an] order affects a substantial right,"
 
 Hanesbrands
 
 , 369 N.C. at ----,
 
 794 S.E.2d at 499
 
 (quoting
 
 Hoke Cnty. Bd. of Educ. v.
 

 State
 
 ,
 
 198 N.C.App. 274
 
 , 277-78,
 
 679 S.E.2d 512
 
 , 516 (2009) (first emphasis added)). " 'Where the appellant fails to carry the burden of making such a showing to the court, the appeal will be dismissed.' "
 

 Id.
 

 at ----,
 
 794 S.E.2d at 499
 
 (quoting
 
 Johnson
 
 ,
 
 168 N.C.App. at 518
 
 ,
 
 608 S.E.2d at
 
 338 ).
 
 *518
 

 1. RSC's Substantial Right Showing
 

 RSC alleges the orders affect its substantial right to "duty-to-defend coverage for currently pending lawsuits" because the orders "eliminat[e] or severely limit[ ] its ability to obtain a defense from its [i]nsurers in currently pending products liability suits." In the statement of the grounds for appellate review section of its principal brief, RSC makes a bare citation to our decision in
 
 Cinoman v. Univ. of N. Carolina
 
 ,
 
 234 N.C.App. 481
 
 ,
 
 764 S.E.2d 619
 
 ,
 
 disc. rev. denied
 
 , --- N.C. ----,
 
 763 S.E.2d 383
 
 (2014), and asserts: "Where, as here, there is a pending suit or claim, 'an interlocutory order concerning the issue of whether an insurer has a duty to defend in the underlying action "affects a substantial right that might be lost absent immediate appeal." ' "
 

 Id.
 

 at 483
 
 ,
 
 764 S.E.2d at 621-22
 
 (quoting
 
 Lambe Realty Inv., Inc. v. Allstate Ins. Co.
 
 ,
 
 137 N.C.App. 1
 
 , 4,
 
 527 S.E.2d 328
 
 , 331 (2000) ). Yet RSC neither applies nor analogizes the facts or procedural posture of
 
 Cinoman
 
 to its case and, therefore, fails to establish adequately that our finding of a substantial right in
 
 Cinoman
 
 controls here.
 

 In
 
 Cinoman
 
 , the plaintiffs, Dr. Cinoman and his malpractice insurer, appealed from an interlocutory injunction order staying their declaratory judgment action brought on the issue of whether the defendant, UNC, owed defense and indemnity in a pending medical malpractice action.
 
 Id.
 
 at 482-83,
 
 764 S.E.2d at 621
 
 . UNC had denied coverage and the patient demanded damages exceeding applicable malpractice insurance policy limits.
 
 Id.
 
 at 483,
 
 764 S.E.2d at 621
 
 . The interlocutory injunction order on appeal stayed the plaintiff's declaratory judgment proceedings pending resolution the underlying malpractice action.
 

 Id.
 

 Accordingly, we concluded the order, which stayed an action brought on the issue of whether defense was owed in the underlying action, "concern[ed] the issue of whether an insurer has a duty to defend in the underlying action," and found a substantial right justifying immediate review.
 
 Id
 
 . at 483,
 
 764 S.E.2d at 621-22
 
 .
 

 Here, conversely, no order RSC appeals stays a declaratory judgment action brought on the issue of whether an insurer owes it defense in a particular claim pending resolution of that underlying claim. Nor do RSC's appeals arise from an action in which it alleges a particular insurer owes it defense in a particular claim. Rather, RSC's appeals arise from an action in which it seeks a declaration of the extent to which multiple insurers owe it a duty "to pay for defense costs and indemnity incurred" in hundreds of unidentified past claims and future claims brought against it. Further, RSC pointed this Court to no facts underlying any allegedly pending claim, such as whether, as in
 
 Cinoman
 
 , coverage has
 
 *519
 
 been denied, or whether damages demanded would exceed reachable coverage limits. RSC's bare assertions that claims are pending against it and that these the orders concern the issue of whether an insurer owes defense in those claims, without further facts or argument, fails to demonstrate that our decision in
 
 Cinoman
 
 to find a substantial right controls its case.
 

 In
 
 Lambe
 
 , we first acknowledged that an insured may be entitled to interlocutory review of an order "of partial summary judgment on the issue of whether [the insurer] has a duty to defend [the insured] in [an] underlying action,"
 
 137 N.C.App. at 4
 
 ,
 
 527 S.E.2d at 331
 
 , because "the duty to defend involves a substantial right to ... the insured,"
 

 id.
 

 (quoting
 
 Gen. Accident Ins. Co. v. Ins. Co. of N. Am.,
 

 44 Ohio St.3d 17
 
 , 21-22,
 
 540 N.E.2d 266
 
 , 271 (1989) ). In recognizing this right, we explained that when an insurer
 
 *460
 
 denies coverage in a pending claim, "the insured often must choose to settle the suit as quickly as possible in order to avoid costly litigation, bring a declaratory judgment action against the insurer seeking a declaration that there is a duty to defend, or defend the suit without help from the insurer."
 

 Id.
 

 (quoting
 
 Gen. Accident Ins. Co.,
 

 44 Ohio St.3d at 21-22
 
 ,
 
 540 N.E.2d at
 
 271 ).
 

 Since
 
 Lambe
 
 , the duty-to-defend substantial right exception has been applied to permit an insured interlocutory review an order deciding the ultimate duty-to-defend issue when an identified claim is pending against it and the order arose from an action in which the insured alleged that it was owed defense in that claim.
 
 See
 

 Enter. Leasing Co. v. Williams
 
 ,
 
 177 N.C.App. 64
 
 , 67-68,
 
 627 S.E.2d 495
 
 , 497-98 (2006) (finding the insured had substantial right where order declared, in part, its insurer owed "no duty to defend" in claim pending against it). This exception has also been applied to review an interlocutory order that stayed declaratory judgment proceedings brought on the ultimate duty-to-defend issue in a particular claim.
 
 See
 

 Cinoman
 
 ,
 
 234 N.C.App. at 483
 
 ,
 
 764 S.E.2d at 621-22
 
 . Heretofore, however, the duty-to-defend substantial right exception has never been applied to interlocutory orders that concern not the ultimate duty-to-defend issue with respect to a particular pending claim but resolve ancillary coverage disputes with respect to numerous unidentified claims, orders that merely may indirectly affect the duty-to-defend issue if applied to an allegedly pending claim.
 
 See
 

 Paradigm Consultants, Ltd. v. Builders Mut. Ins. Co.
 
 ,
 
 228 N.C.App. 314
 
 , 319,
 
 745 S.E.2d 69
 
 , 73 (2013) (finding no substantial right, in part, because, although order dismissed the insurer's affirmative defenses, it "did not address the ultimate issue of whether [the insurer] owed [the insured] a duty to defend and indemnify" in pending claim).
 

 *520
 
 In this case, the orders RSC appeals decide the proper trigger theory and cost allocation method, as well as policy exhaustion method by which Landmark's and Zurich's umbrella coverage obligations attach, with respect to numerous unidentified claims. But no order directly decides or stays a decision on the ultimate duty-to-defend issue with respect to any particular claim. Although we are cognizant that certain orders may implicate the duty-to-defend issue to differing degrees depending upon the facts of an allegedly pending claim, RSC advanced no legal argument for expanding the duty-to-defend substantial right exception to orders that do not directly decide this ultimate issue. Additionally, unlike the appeals in
 
 Enterprise Leasing Co.
 
 and
 
 Cinoman
 
 , which arose from an allegation that an insurer owed defense in a particular pending claim, RSC's appeals arise from its allegation that multiple insurers owe it a "duty to pay for defense costs and indemnity incurred" in numerous unidentified claims. RSC advanced no argument for expanding this exception to appeals arising not from an allegation that an insurer owes defense in a particular pending claim but in hundreds of resolved, and a few allegedly pending, unidentified claims. Further, neither RSC shows adequately nor does the record indicate how delaying RSC's appeals until final judgment would force it to settle suits quickly, bring another declaratory judgment action, or leave it unable to mount an adequate defense in any claim.
 
 See
 

 Lambe
 
 ,
 
 137 N.C.App. at 4
 
 ,
 
 527 S.E.2d at 331
 
 . "[W]e take a restrictive view of the substantial right exception to the general rule prohibiting immediate appeals from interlocutory orders."
 
 Hamilton v. Mortg. Info. Servs., Inc.
 
 ,
 
 212 N.C.App. 73
 
 , 78,
 
 711 S.E.2d 185
 
 , 189 (2011) (citation, quotation marks, and brackets omitted).
 

 Yet "[r]ecognizing that 'the "substantial right" test for appealability of interlocutory orders is more easily stated than applied,' ... it is 'usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered.' "
 
 Hanesbrands
 
 , 369 N.C. at ----,
 
 794 S.E.2d at 500
 
 (quoting
 
 Waters
 
 ,
 
 294 N.C. at 208
 
 ,
 
 240 S.E.2d at
 
 343 ). Generally, "each interlocutory order must be analyzed to determine whether a substantial right is jeopardized by delaying the appeal."
 
 Stetser v. TAP Pharm. Prod., Inc.
 
 ,
 
 165 N.C.App. 1
 
 , 11,
 
 598 S.E.2d 570
 
 , 578 (2004).
 

 *461
 
 Here, the Trigger Order and Allocation Order decide the proper theory of triggering coverage and method of allocating defense and indemnity costs in hundreds of past and future claims brought against RSC. In the Zurich Indemnity Obligations Order, the court ruled that Zurich owes no duty to indemnify RSC until RSC demonstrates that it has exhausted the
 
 *521
 
 liability-retained limit of Zurich's umbrella policy, which the court ruled RSC cannot erode by applying its indemnity costs paid or liabilities incurred without Zurich's consent. Zurich's policy provided $5 million in umbrella liability coverage per occurrence and in annual aggregate, with a $10,000.00 liability-retained limit per claim, for the 13 November 1982-13 November 1983 policy period. In the Landmark Partial Summary Judgment Order, the court ruled that the Landmark umbrella policies may afford RSC a duty to defend in a given benzene action where all applicable underlying policies have been exhausted by payments or settlements on RSC's behalf. These policies provided umbrella coverage in $10 million or $8 million per occurrence and annual aggregate amounts, with a $10,000.00 retained limit, for nearly annual policy periods spanning from 8 October 2003 to 1 May 2014.
 

 RSC asserts in a footnote to its brief that, as of 31 October 2016, thirty-nine benzene claims remain pending against it, and argues the orders would work injury to its substantial right to insurance defense in those claims if not immediately reviewed because the Allocation Order "restricted the [i]nsurers' duty to defend RSC to a small fraction of its litigation costs under the guise of pro rata allocation"; the Trigger Order "reduced the number of policies available to defend RSC by applying the more restrictive 'exposure' trigger of coverage"; the Landmark Partial Summary Judgment Order "eliminated RSC's right to a defense from Landmark due to application of 'horizontal exhaustion' "; and the Zurich Horizontal Exhaustion Order "delayed RSC's right to a defense under Zurich's umbrella policy by barring RSC from properly counting settlements which did not require Zurich's consent toward exhausting underlying limits." Yet RSC never explained the practical impact applying any of these orders would have on its right to insurance defense in any allegedly pending claim.
 

 RSC pointed this Court to no factual predicate underlying an allegedly pending benzene claim, nor did it identify any pending asbestos claims.
 
 See
 

 Paradigm
 
 ,
 
 228 N.C.App. at 319
 
 ,
 
 745 S.E.2d at 73
 
 (finding no substantial right when underlying litigation had resolved). Additionally, the record reveals that the trial court entered an order declaring that three insurers owed RSC defense in benzene claims. These insurers issued RSC seven reachable policies providing primary liability coverage for certain annual periods within the 1981-1992 coverage block in differing amounts, subject to differing policy limits, deductibles, and retentions. In light of this order and RSC's failure to point us to any relevant facts in any allegedly pending claim-such as, whether insurers have denied coverage, the period in which claimants alleged exposure
 
 *522
 
 to RSC's benzene-containing products or evidence indicates suffered an injury-in-fact, or the amount of damages demanded-this Court is unable to determine which policy periods may be implicated, which policies may be triggered, the extent to which RSC may be entitled to reachable primary coverage, or the extent to which excess or umbrella coverage might attach in any particular claim.
 

 Because RSC failed to present sufficient facts and argument explaining the practical consequence of applying any order to any allegedly pending claim, especially in light of being entitled to some defense, this Court cannot meaningfully assess the extent to which any order may actually impact its right to defense in a pending claim or the extent to which any order may work injury if not immediately reviewed. Nor is it "the duty of this Court to construct arguments for or find support for an appellant's right to appeal; the appellant must provide sufficient facts and argument to support appellate review on the ground that the challenged order affects a substantial right."
 
 Wells Fargo Bank, N.A. v. Corneal
 
 ,
 
 238 N.C.App. 192
 
 , 194,
 
 767 S.E.2d 374
 
 , 376 (2014) (citing
 
 Hamilton
 
 ,
 
 212 N.C.App. at 79
 
 ,
 
 711 S.E.2d at
 
 190 ). Because RSC has failed to demonstrate the applicability of its alleged substantial right exception
 
 *462
 
 to its particular case, we dismiss its appeals.
 
 See
 

 Hanesbrands
 
 , 369 N.C. at ----,
 
 794 S.E.2d at 499
 
 ("Where the appellant fails to carry the burden of making such a showing to the court, the appeal will be dismissed." (citation omitted)).
 

 2. Fireman's Fund's Substantial Right Showing
 

 Fireman's Fund contends the Trigger Order affects substantial rights. It argues application of exposure trigger absolves certain insurers of their defense duties in pending claims, duties that may be triggered if injury-in-fact trigger were applied. Yet other than this bare assertion, Fireman's Fund advances no further showing of how applying exposure trigger would actually impact any particular claim. Although we recognize the Trigger Order may implicate different insurers' defense duties, as we concluded above, insufficient facts and arguments have been advanced for this Court meaningfully to assess the Trigger Order's practical effect on any allegedly pending claim.
 

 National Union argues Fireman's Fund cannot establish appellate jurisdiction on the basis that the Trigger Order affects its substantial rights because the trial court entered an order declaring that Fireman's Fund owed RSC no duty to defend absent its consent. We agree.
 

 In
 
 Peterson v. Dillman
 
 , --- N.C.App. ----,
 
 782 S.E.2d 362
 
 (2016), we rejected a similar substantial right argument advanced by an automobile
 
 *523
 
 insurer which attempted to appeal an interlocutory order that declared its policy covered a pending claim because, in light of an applicable statute, the order's practical effect was to permit but not require the insurer to defend in that pending claim.
 

 Id.
 

 at ----,
 
 782 S.E.2d at 367
 
 ("We cannot agree with [the insurer] that its
 
 choice
 
 to enter the action is tantamount to a
 
 duty
 
 to defend an insured".). Here, the trial court entered an order declaring that Fireman's Fund owed RSC no defense duty absent Fireman's Fund's consent. As in
 
 Peterson
 
 , we conclude Fireman's Fund's ability but not duty to defend RSC does not implicate its substantial rights. Further, Fireman's Fund makes no showing as to how the Trigger Order would work injury to it if not reviewed before final judgment.
 
 See
 

 Harris
 
 ,
 
 361 N.C. at 270
 
 ,
 
 643 S.E.2d at 569
 
 ("It is not determinative that the trial court's order affects a substantial right. The order must also work injury if not corrected before final judgment.").
 

 Because applying the Trigger Order has no practical effect on Fireman's Fund's substantial rights, it cannot establish appellate jurisdiction on this basis.
 
 See
 

 Sharpe v. Worland
 
 ,
 
 351 N.C. 159
 
 , 162,
 
 522 S.E.2d 577
 
 , 579 (1999) ("[A]n interlocutory order affects a substantial right if the order 'deprive[s] the
 
 appealing
 
 party of a substantial right which will be lost if the order is not reviewed before a final judgment is entered.' " (emphasis added) (quoting
 
 Cook v. Bankers Life & Cas. Co.,
 

 329 N.C. 488
 
 , 491,
 
 406 S.E.2d 848
 
 , 850 (1991) ).
 

 3. United National's and Zurich's Substantial Right Showing
 

 United National and Zurich make no substantial right showing. These parties concede no order affects their substantial rights and contend that RSC's and Fireman's Fund's appeals and cross-appeals, as well as their own, should be dismissed at this stage in litigation. Because we dismiss RSC's and Fireman's Fund's appeals, we also dismiss United National's and Zurich's cross-appeals.
 

 4. Other Avenues of Establishing Jurisdiction
 

 As a secondary matter, we note that RSC and Fireman's Fund could have attempted to establish appellate jurisdiction by obtaining a Rule 54(b) -certification on any of these interlocutory orders.
 
 See
 

 Duncan,
 

 366 N.C. at 545
 
 ,
 
 742 S.E.2d at 801
 
 ("Certification under Rule 54(b) permits an interlocutory appeal from orders that are final as to a specific portion of the case, but which do not dispose of all claims as to all parties."). These parties either did not seek Rule 54(b) -certification or were unsuccessful in persuading the trial court to certify any of its orders as appropriate for immediate appellate review. Because these orders were not Rule 54(b) -certified, they are subject to change until entry of a final judgment.
 

 *524
 

 *463
 
 N.C. Gen. Stat. § 1A-1, Rule 54(b) ("[I]n the absence of entry of such a final judgment, any order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.");
 
 see also
 

 Greene v. Charlotte Chem. Labs., Inc.
 
 ,
 
 254 N.C. 680
 
 , 693,
 
 120 S.E.2d 82
 
 , 91 (1961) ("[A]n [interlocutory] order ... is subject to change by the court during the pendency of the action to meet the exigencies of the case.").
 

 We also acknowledge that Fireman's Fund has filed a petition for writ of certiorari, which RSC has joined, requesting appellate review of any interlocutory order deemed unappealable. In our discretion, we deny the petition.
 

 The general prohibition against entertaining interlocutory appeals exists "to eliminate the unnecessary delay and expense of repeated fragmentary appeals,"
 
 Edwards
 
 ,
 
 234 N.C. at 529
 
 ,
 
 67 S.E.2d at 671
 
 , and to "permit[ ] the trial divisions to have done with a case fully and finally before it is presented to the appellate division,"
 
 Waters
 
 ,
 
 294 N.C. at 207
 
 ,
 
 240 S.E.2d at 343
 
 . We reiterate that " '[t]here is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders.' "
 
 Harris v. Matthews
 
 ,
 
 361 N.C. 265
 
 , 269,
 
 643 S.E.2d 566
 
 , 568-69 (2007) (quoting
 
 Veazey,
 

 231 N.C. at 363
 
 ,
 
 57 S.E.2d at
 
 382 ). At this stage in litigation, significant non-collateral issues such as damages remain disputed and pending and it is unclear from the record the extent to which other claims, including RSC's two individual claims against National Union, have been resolved. We conclude that "[t]his case should be reviewed, if at all, in its entirety and not piecemeal."
 
 Tridyn Indus.
 
 ,
 
 296 N.C. at 494
 
 ,
 
 251 S.E.2d at 449
 
 (dismissing as untimely appeal from interlocutory order resolving issue of liability coverage but leaving unresolved issue of damages and denying the appellant's writ of certiorari as a means to otherwise establish appellate jurisdiction).
 

 III. Conclusion
 

 The six orders on appeal or cross-appeal are interlocutory. None were Rule 54(b) -certified by the trial court which entered them as appropriate for immediate appellate review. Nor has any party sufficiently demonstrated how any order affects its substantial rights and would work injury absent immediate review.
 

 RSC failed to establish how the orders would irreparably affect its substantial right to insurance defense in allegedly pending benzene claims, especially in light of the particular facts and posture of its case. No order decides the ultimate duty-to-defend issue with respect to
 
 *525
 
 any particular claim. RSC failed to advance a sufficient argument for expanding the duty-to-defend substantial right exception to any order that may have a secondary effect on this ultimate issue, which arose from an action brought not on any particular pending claim but on numerous unidentified claims. RSC failed to present sufficient facts underlying any allegedly pending benzene claim, is entitled to some defense for benzene claims, and failed to show how applying any order would practically impact its defense in any pending claim, especially in light of reachable primary coverage. Fireman's Fund cannot establish that the Trigger Order affects its substantial rights because it owes RSC no defense duty absent its consent. The remaining insurers argue these appeals and their own cross-appeals should be dismissed at this stage in litigation and we agree.
 

 We dismiss these appeals and cross-appeals so that all issues may be fully and finally resolved before appellate review.
 

 DISMISSED.
 

 Judges DILLON and ZACHARY concur.